UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAMES OLLISON, | Case No. 20-cv-04944-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING ALAMEDA HEALTH'S MOTION TO DISMISS** |
| ALAMEDA HEALTH SYSTEMS, et al., | Re: ECF No. 24 |
| Defendants. | |

## INTRODUCTION

Plaintiff James Ollison, who is representing himself and proceeding in forma pauperis, sued the defendants — Alameda Health Systems (d/b/a Highland Hospital) and Paramedics Plus — for their allegedly deficient medical care of his son (who died in February 2019), in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and state law.[1] Alameda Health moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) in part on the grounds that the plaintiff (1) did not plausibly plead an EMTALA claim because he was admitted for treatment and (2) did not timely file the lawsuit as to the state claims.[2] The court grants the motion.

---

[1] First Amend. Compl. ("FAC") – ECF No. 14 at 2. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 24.

ORDER – No. 20-cv-04944-LB

**STATEMENT**

The plaintiff's son, Akin Lamar Ollison, was an inpatient at Highland Hospital when he died on February 28, 2019.[3] The plaintiff alleges the following about Akin's medical condition and treatment in February 2019.

Akin "presented to" Highland Hospital on February 18, 2019 "because of acute respiratory distress." Highland Hospital admitted him as an "overnight" inpatient, and a physician there diagnosed him with suffering an "acute asthma exacerbation" and an upper respiratory infection that likely triggered the acute asthma attack. Akin also was out of his inhaler and probably needed a daily steroid inhaler. The hospital determined that Akin was a member of the Health Plan of San Joaquin and that "it could not receive full payment for its billed emergency services from" that health plan. "As a result, the following day on February 19, 2019," Highland discharged Akin "notwithstanding the fact . . . that he was still experiencing acute respiratory distress" and "while refusing to provide the decedent with the necessary and prudent medications" to address his condition, including an Albuterol inhaler, an AVAR inhaler, and Prednisone. Highland discharged Akin with a prescription and told him to go to San Joaquin County to fill it, "knowing that it was a strong possibility that the decedent would suffer another severe respiratory attack before he could return to San Joaquin County." Akin was unable to go to San Joaquin County and was unable to obtain his "needed medications" over the next few days. As a result, his condition worsened.[4]

In the late evening on February 21, 2020, Akin's cousin called 911 because Akin (then in Oakland) was suffering another episode of acute respiratory distress and was unable to get adequate oxygen to his body and brain. The dispatcher told the cousin to stay on the line until the paramedics arrived. During the call, the cousin told the dispatcher that Akin had taken three "breathing treatments" earlier that day and was still in acute respiratory distress. The dispatcher told the cousin to tell Akin to keep using the nebulizer until the paramedics arrived.[5]

---

[3] FAC – ECF No. 14 at 14 (¶ 46).

[4] *Id.* at 12 (¶ 37).

[5] *Id.* at 11–12 (¶ 38).

The Oakland Fire Department responded to the scene first and did not administer medical treatment (because they said that they would wait for the paramedics to arrive and treat Akin).[6] Paramedics from co-defendant Paramedics Plus arrived "as duly authorized agents" for Highland Hospital and "also chose not to render emergency medical treatment to the decedent," including by not measuring or assessing his vital signs, taking his medical history, or giving him oxygen or a commonly used inhaler such as Atrovent or Albuterol. Family members pleaded with the Paramedics Plus emergency technicians to administer medication or render some other appropriate treatment, but they put Akin into a wheelchair, rolled him to the ambulance, and transported him to Highland Hospital.[7]

Akin was still alive when he was placed in the ambulance, but on the way to the hospital, he became "pulseless and apneic and [was] determined to be in cardiac arrest."[8] Only then did Paramedics Plus begin administering medical treatment and monitoring Akin's acute respiratory distress.[9] The trip to the hospital took 10 minutes. When Akin arrived at the hospital, Paramedics Plus employees were applying CPR techniques (but not giving oxygen), which meant that on arrival at the hospital, Akin had been "oxygen deprived for approximately 10 minutes."[10] When Akin arrived at Highland Hospital's emergency room, he did not receive oxygen for approximately 35 minutes, which means that in total, he was deprived of oxygen for 35 to 45 minutes. As a result, he suffered adverse medical conditions, including brain herniation, anoxic brain injury, and status asthmaticus, which "contributed" to his death on February 28, 2019.[11] Highland Hospital "refused to provide these immediately necessary emergency medical services

---

[6] *Id.* at 13 (¶ 39).

[7] *Id.* at 13–14 (¶ 40).

[8] *Id.* at 14–15 (¶ 41).

[9] *Id.* at 14–15 (¶¶ 41–42).

[10] *Id.* at 15 (¶ 42).

[11] *Id.* at 16–17 (¶ 46).

because it knew it could not receive its customary rate for its services from 'Health Plan of San Joaquin,' an out-of-network provider."[12]

To lower the increased pressure in Akin's brain, hospital employees performed an external ventricular drain, but they did not follow the protocols for the appropriate dosages of the medications Propofol, Mannitol, and Fentanyl, which fell below the standard of care and also caused his death.[13]

The plaintiff charges both defendants with (1) two counts of violating EMTALA, (2) one count for declaratory relief, (3) one count of medical malpractice, (4) breach of the implied covenant of good faith and fair dealing, (5) negligent infliction of emotional distress, and (6) loss of consortium.[14]

The plaintiff made a written claim under California's Government Claims Act to Highland Hospital on June 8, 2019.[15] The hospital rejected the claim in a letter dated August 23, 2020 that told the plaintiff that he had six months to file a state-court action.[16] The plaintiff was incarcerated from November 29, 2019 to March 24, 2020.[17] He filed this lawsuit on July 21, 2020.[18]

The court held a hearing on December 3, 2020. All parties consented to magistrate-judge jurisdiction.[19]

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

---

[12] *Id.* at 16 (¶ 46).

[13] *Id.* at 23 (¶ 77).

[14] *Id.* at 18–28 (¶¶ 52–92).

[15] Claim, Ex. A to Tanimasa Decl. – ECF No. 24-1 at 4.

[16] Letter, Ex. B to *id.* – ECF No. 241-1 at 6–7.

[17] Ollison Supp. Decl. – ECF No. 33 at 1–2 (¶¶ 2–3).

[18] Compl. – ECF No. 1.

[19] Consents – ECF Nos. 4, 18, and 25.

complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The court grants the motion to dismiss the EMTALA claims on the merits and the state claims on procedural grounds.

**1. EMTALA claims**

"EMTALA imposes two duties on hospital emergency rooms: a duty to screen a patient for an emergency medical condition, and, once an emergency condition is found, a duty to stabilize the patient before transferring or discharging him." *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 992 (9th Cir. 2001) (citing 42 U.S.C. § 1395dd and *Jackson v. E. Bay Hosp. (Jackson II)*, 246 F.3d 1248, 1254–55 (9th Cir. 2001)).

EMTALA defines an "emergency medical condition" in relevant part as

> [A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in —
>
> (i) placing the health of the individual . . . in serious jeopardy,
>
> (ii) serious impairment to bodily functions, or
>
> (iii) serious dysfunction of any bodily organ or part[.]

42 U.S.C. § 1395dd(e)(1)(A). Under EMTALA,

> If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either —
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

*Id.* § 1395dd(b)(1). EMTALA defines "to stabilize" in relevant part as "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" *Id.* § 1395dd(e)(3)(A).

EMTALA further provides that "[i]f an individual at a hospital has an emergency medical condition which has not been stabilized (within the meaning of subsection (e)(3)(B) of this section), the hospital may not transfer the individual," absent certain exceptions not at issue here. *Id.* § 1395dd(c)(1). The term "transfer" includes discharging a patient from a hospital. *Id.* § 1395dd(e)(4).

Congress enacted EMTALA to prevent "patient dumping," a practice whereby hospitals "dump" patients "who [a]re unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." *Jackson v. E. Bay Hosp. (Jackson I)*, 980 F. Supp. 1341, 1345 (N.D. Cal. 1997) (citing *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir.1995)). "EMTALA's stabilization requirement ends when an individual is admitted for inpatient care." *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1168 (9th Cir. 2002). "Congress enacted EMTALA 'to create a new cause of action, generally unavailable under

state tort law, for what amounts to failure to treat' and not to 'duplicate preexisting legal protections.'" *Id.* at 1168–69 (quoting *Gatewood v. Wash. Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C. Cir. 1991) and citing other cases). "After an individual is admitted for inpatient care, state tort law provides a remedy for negligent care." *Id.* at 1169. "If EMTALA liability extended to inpatient care, EMTALA would be 'converted into a federal malpractice statute, something it was never intended to be.'" *Id.* (cleaned up) (quoting *Hussain v. Kaiser Found. Health Plan*, 914 F. Supp. 1331, 1335 (E.D. Va. 1996)).

Here, for the first visit to Highland Hospital on February 18, 2019, the plaintiff does not plausibly plead that Akin was not stable when he was discharged. *Baker*, 260 F.3d at 992. He also alleges that Akin was admitted as an inpatient, which ends liability under EMTALA. *Bryant,* 289 F.3d at 1168–69. For the second visit to Highland Hospital, Akin was admitted and treated, again foreclosing any EMTALA claim. *Id.* The plaintiff's remedies thus are those under state tort law. *Id.* at 1169.

## 2. State Claims

Without a federal claim, at this stage of the case, the court generally would not exercise supplemental jurisdiction over the state claims. 28 U.S.C. § 1367(a) & (c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). But Alameda Health also contends that the lawsuit is not timely because the plaintiff did not file it (1) within six months after Highland Hospital denied the plaintiff's written claim under California's Government Claims Act, Cal. Gov't Code § 945.6(a)(1), and (2) within one year under the applicable statute of limitations, Cal. Civ. Proc. Code § 340.5 (enacted as part of the Medical Injury Compensation Reform Act ("MICRA")). (Liberally construed, the plaintiff's state claims all charge medical malpractice, grounded in Highland Hospital's failure to provide appropriate medical care, which means that MICRA's one-year statute of limitations applies.[20])

---

[20] FAC – ECF No. 14 at 18–28 (¶¶ 52–92).

United States District Court
Northern District of California

1   The plaintiff filed the lawsuit more than six months after Highland Hospital denied his claim, 2 which makes it untimely under the Government Claims Act. The plaintiff contends that the time to 3 file the lawsuit was extended by the time he spent in custody at Santa Rita jail.[21] Cal. Civ. Proc. 4 Code § 352.1(a) (if a person is imprisoned at the time a cause of action accrues, the period of that 5 disability is "not part of the time limited for the commencement of the action, not to exceed two 6 years"). Akin died on February 28, 2019, and the plaintiff was not in custody when Highland 7 Hospital rejected his claim. In any event, § 352.1(a) does not apply to the deadline for claims 8 covered under the Government Claims Act. *Id.* § 352.1(b); *McPherson v. Alamo*, No. 15-cv-9 03145-EMC, 2016 WL 7157634, at *5 (N.D. Cal. Dec. 8, 2016); *see also Ruiz v. Ahern*, No. 20-10 cv-001089-DMR, 2020 WL 4001465, at *4–6 (N.D. Cal. July 15, 2020) (in the context of a 42 11 U.S.C. § 1983 action, which is not subject to the Government Clams Act, discussing how courts 12 are split about whether § 352.1(a) still applies to pretrial detainees; a Ninth Circuit case said it did, 13 and a subsequent California Court of Appeals decision said that it applied only to state prisoners, 14 and not to detainees (including pretrial detainees) in county jail).[22]

15   Even if the plaintiff had filed the lawsuit by six months after Highland Hospital's rejection 16 letter, the filing was more than one year after his son's death, which makes it untimely under the 17 one-year MICRA statute of limitations. "[C]ourts have held that parties must comply with *both* 18 Government Claims Act requirements and § 340.5. . . ." *Lozano v. Cty. of Santa Clara*, No. 19-cv-19 02634-EMC, 2019 WL 6841215, at *9 (N.D. Cal. Dec. 16, 2019) (emphasis in original) (citing, 20 "*e.g.*," *Roberts v. Cty. of Los* Angeles, 175 Cal. App. 4th 474, 381 (2009)), *appealed on other* 21 *grounds*, Opening Brief, No. 20-15992 – ECF No. 13 (Sept. 25, 2020). In *Roberts*, the court 22 construed the one-year MICRA statute of limitations "'as the outer limit by which a lawsuit may 23 be filed against a public health care provider. This way, MICRA can apply to public health care

---

[21] Opp'n – ECF No. 26 at 3–4 (citing Cal. Code Civ. P. 352.1(a)).

[22] On this briefing, given that the plaintiff is representing himself and only one court in the Ninth Circuit has addressed the issue, the court does not reach Alameda Health's argument that the Government Claims Act's six-month presentment also bars the EMTALA claim. Mot. – ECF No. 24 at 12–13 (citing *Sanders v. Palomar Med. Ctr.*, No. 10-CV-0514MMA, 2010 WL 2635627, at * 4–5 (S.D. Cal. June 30, 2010)).

1   providers without conflicting with the Government Claims Act.'" *Id.* (quoting *Roberts*, 175 Cal.
2   App. 4th at 381).

### 3.  Other Issues

Alameda Health also identifies the plaintiff's failure to comply with California's survival statute's procedural requirements for the EMTALA and state claims.[23] Cal. Civ. Proc. Code § 377.20; *Jackson I*, 980 F. Supp at 1354. Under § 377.20, "a cause of action for or against a person is not lost by reason of the person's death," whether the loss or damage occurs simultaneously with or after the death, "but survives subject to the applicable limitations period." Cal. Civ. Proc. Code § 377.20(a)–(b). The decedent's successor in interest or personal representative may prosecute the action if he satisfies the requirements of California law. *Id.* § 377.30; *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) (citing Cal. Code Civ. Proc. §§ 377.30, 377.32); *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998).[24] The plaintiff must allege and prove that he has standing to sue in a representative capacity or as a successor in interest. *Byrd*, 137 F.3d at 1131. The successor in interest or personal representative must file a certified copy of the death certificate and an affidavit or declaration with the following:

> (1) The decedent's name.
> (2) The date and place of the decedent's death.
> (3) "No proceeding is now pending in California for administration of the decedent's estate."
> (4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest.
> (5) Either of the following, as appropriate, with facts in support thereof:
> (A) "The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding."

---

[23] *Id.* at 11–15.

[24] The California statue defines "decedent's successor in interest" as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Civ. Proc. Code § 377.11.

(B) "The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding."

(6) "No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding."

(7) "The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Cal. Civ. Proc. Code § 377.32 (apostrophes in the quoted text); *Wishum v. California,* No. 14-CV-01491-JST, 2014 WL 3738067, at *2 (N.D. Cal. July 28, 2014). The plaintiff did not comply with these requirements.

## CONCLUSION

The court reiterates what it said at the hearing: Mr. Ollison did a wonderful job with his filings in the case. The problem is that there is not an EMTALA claim when someone is admitted for treatment, and the state claims are time barred. The court thus grants the motion to dismiss. The court is not certain that Mr. Ollison can cure the issues but he may file an amended complaint by January 11, 2021.

The court also extends (again) its condolences to Mr. Ollison and his family. It is a terrible thing to lose anyone, but it is particularly sad to lose a child. It is not the natural order of things.

**IT IS SO ORDERED.**

Dated: December 8, 2020

LAUREL BEELER
United States Magistrate Judge